# UNITED STATES DISTRICT COURT
# SOUTHISN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **JOHN RETTIG**<br>**2501 Hyacinth Lane**<br>**Columbus, OH 43235** | : <br> : <br> : <br> : | Case No. 1:22-cv-700 <br><br> Judge |
| **Plaintiff,** | : <br> : | |
| v. | : <br> : | |
| **WEST CHESTER HOLDINGS, LLC**<br>**d/b/a WEST CHESTER**<br>**PROTECTIVE GEAR**<br>**11500 Canal Rd.**<br>**Cincinnati, OH 45241** | : <br> : <br> : <br> : <br> : <br> : | |
| **Defendant.** | : | |

_____

## COMPLAINT AND JURY DEMAND
_____

Now comes Plaintiff John Rettig who for his Complaint against West Chester Holdings, LLC, d/b/a West Chester Protective Gear states as follows:

### I. PRELIMINARY STATEMENT

1.    This action arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et. seq*. and the Ohio Civil Rights Act, O.R.C. § 4112.02, *et seq*.  Mr. Rettig, a former employee of Defendant, alleges that Defendant violated his rights under state and federal law by terminating him because of his disability.

2.    Mr. Rettig seeks relief for the aforementioned acts and/or omissions in the form of compensatory damages for his economic injuries, compensatory damages for his non-economic injuries, equitable relief in the form of reinstatement or front pay, and punitive damages.  Finally, Mr. Rettig seeks payment of his attorney fees and costs in prosecuting this matter.

## II. JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, 42 U.S.C. §12101, *et. seq*. This Court may assume supplemental jurisdiction over Plaintiff's claims under Ohio law pursuant to 28 U.S.C. § 1367 because his state law claims arise from the same case or controversy as his federal claims.

4. Venue with this Court is appropriate because the acts complained of herein occurred within the Southern District of Ohio.

## III. ADMINISTRATIVE HISTORY

5. On or about August 6, 2021, Mr. Rettig filed a charge of discrimination (No. 473-2021-01423) with the Equal Employment Opportunity Commission ("EEOC") against WCPG, alleging disability discrimination. On August 31, 2022, the EEOC issued Mr. Rettig a Notice of Right to Sue.

6. Mr. Rettig has timely filed this claim within 90 days of that notice.

## IV. PARTIES

7. Plaintiff John Rettig is a United States citizen and a resident of Cincinnati, Ohio. Mr. Rettig worked for WCPG as a graphic designer.

8. Defendant West Chester Holdings, LLC, d/b/a West Chester Protective Gear ("WCPG") is an Ohio limited liability company doing business in the Southern District of Ohio. Defendant WCPG is an employer as that term is defined by the Americans with Disabilities Act and the Family and Medical Leave Act.

## V. STATEMENT OF THE CASE

9. WCPG hired Mr. Rettig on or about March 15, 2017, as a graphic designer.

10.     As a graphic designer, Mr. Rettig was responsible for internal graphic design work, including package design, product design, branding, creating materials for virtual trade shows, product photography, web design, video creation, and proofing, editing and printing designs and materials.

11.     Mr. Rettig suffers from disabilities including asthma and a chronic injury to the lumbar spine.

12.     Mr. Rettig's asthma is a condition that substantially limits the major life activity of breathing and the normal operation of his respiratory system.

13.     Mr. Rettig's lumbar spine injury is a condition which substantially limits one or more major life activities, including sitting, standing, bending over, and lifting, and the normal operation of his musculoskeletal system.

14.     Due to his spine injury, Mr. Rettig was unable to work standing up for more than several hours at a time. Mr. Rettig requested as an accommodation to split his workdays between standing work on photoshoots and sitting desk work. Furthermore, Mr. Rettig applied for, and WCPG approved, intermittent FMLA leave for sciatica flareups caused by his injury.

15.     On or about January 29, 2019, Mr. Rettig contracted pneumonia, which aggravated his asthma and further damaged his respiratory system, exacerbating his asthma.

16.     Because of his severe asthma, Mr. Rettig was particularly susceptible to respiratory infections such as COVID-19 and had a higher likelihood of life-threatening complications if he were to contract such a disease.

17.     Mr. Rettig's asthma was aggravated by breathing obstructions such as facemasks. Therefore, during the COVID-19 pandemic, it was important for Mr. Rettig to avoid close contact with others to ameliorate his risk of becoming seriously ill.

18. In or around March 2020, WCPG responded to the spread of COVID-19 by providing its employees with the option to work remotely.

19. Due to his vulnerability to COVID-19, Mr. Rettig requested permission to work remotely during this period. WCPG granted this request. On occasion, Mr. Rettig worked at the WCPG office in the photography lab. Because many other WCPG employees were working remotely, Mr. Rettig was able to avoid close contact with other employees while he worked in the lab.

20. In July 2020, WCPG switched to a hybrid work schedule in which employees alternated working remotely and working in the office on a staggered basis.

21. On June 25, 2020, Mr. Rettig's supervisor, Austin Reid, informed him that under the new hybrid schedule he could not continue to split his work time between his desk and the photography lab. Instead, Mr. Reid instructed Mr. Rettig to spend full days standing in the photography lab. Further, Mr. Reid told Mr. Rettig he was not permitted to work from his desk without wearing a face mask. Other employees were not subject to this same requirement.

22. On June 26, 2020, Mr. Rettig complained to Grace Fuson, a Human Resources representative for WCPG, that Mr. Reid's instructions contradicted his existing accommodations. Mr. Rettig requested a meeting to reconcile his accommodations with WCPG's new working schedule and provided her with a note from his Physician stating that his asthma was aggravated by wearing a face mask for more than 20 minutes at a time.

23. After meeting with Ms. Fuson on June 29, 2020, WCPG permitted Mr. Rettig to set up a table in the photography lab to use as a desk, enabling him to accommodate his

disabilities by both isolating himself in the photography lab where he could work without a face mask and splitting his time between standing work and desk work.

24. On October 5, 2020, WCPG began full time work in the office for all employees. Because all employees had returned to the office, Mr. Rettig was at a higher risk of exposure to COVID-19. Furthermore, the return of full staff meant that Mr. Rettig could no longer safely isolate himself in the photography lab.

25. Mr. Rettig notified both WCPG HR and his supervisors, Greg Plunkett and Mr. Reid, of his disabilities and his need for new accommodations.

26. Despite his requests, Mr. Plunkett and Mr. Reid continued to assign Mr. Rettig projects which would put him in direct contact with other employees and require him to wear a mask for extended periods of time.

27. On October 9, 2020, Mr. Rettig complained to Human Resources that Mr. Reid and Mr. Plunkett were harassing him and endangering his life by ignoring the safety measures he needed to be able to work in the office and by not providing him with accommodations he had requested.

28. In response to Mr. Rettig's complaint, Sue Snyder, Director of Human Resources for WCPG's parent company PIP, advised Mr. Rettig to have his physician complete ADA paperwork requesting an accommodation.

29. On October 13, 2020, Mr. Rettig's physician provided a letter which stated that Mr. Rettig was at a higher risk of complication from COVID-19 than the general population due to his underlying medical condition.

30. Mr. Rettig provided WCPG with this letter on October 23, 2020. On November 3, 2020, Mr. Rettig's physician returned the completed ADA paperwork to WCPG.

31. On November 19, 2020, WCPG approved Mr. Rettig to work remotely for 60 days as an accommodation for his disability. Extensions to this accommodation were to be reviewed at a later time.

32. On December 18, 2020, Mr. Rettig submitted paperwork to request an extension of his accommodation. However, WCPG denied his application for extension.

33. On January 13, 2021, Mr. Rettig met with Ms. Fuson and Ms. Snyder to discuss WCPG's denial of his request for an extension of his accommodation. Although Mr. Rettig and his colleagues had been regularly working remotely since March 2020, Ms. Fuson and Ms. Snyder told Mr. Rettig that extending his existing work from home accommodation would create an undue hardship for WCPG.

34. Ms. Fuson and Ms. Snyder presented Mr. Rettig with only two options: return to work full-time with no accommodation, or apply for FMLA continuous leave.

35. Two days later, on January 15, 2021, WCPG announced that, due to county-wide COVID-19 restrictions, all employees would be permitted to work remotely until February 5, 2021. This allowed Mr. Rettig to briefly continue to work remotely despite WCPG denying his formal request for accommodation.

36. In anticipation of returning to the office, on February 3, 2021, Mr. Rettig emailed Ms. Fuson to propose alternative accommodations that would allow him to continue to work in the office. Mr. Rettig proposed several potential accommodations, including allowing him to work in a room that was not shared by others, requiring that disinfection of the photography lab after use by others and that it not be used by others while he was using it, exempting Mr. Rettig from in-person attendance of meetings, providing him with a HEPA filter air purifier, permitting him to work remotely half days, and not assigning Mr. Rettig projects that would require in-person contact. Mr. Rettig additionally

suggested that these accommodations would only be necessary until he could be vaccinated against COVID-19.

37. In response, Ms. Fuson told Mr. Rettig that WCPG was unable to continue accommodating him working remotely. Ms. Fuson denied all of the alternative accommodations Mr. Rettig had proposed, and reiterated that his "current option" was to go on FMLA leave until he was able to return to the office.

38. WCPG neither provided Mr. Rettig with justification for WCPG's denial of his proposed accommodations, nor proposed alternative accommodations.

39. Per Ms. Fuson's command, Mr. Rettig applied for FMLA continuous leave for his disability on or about February 9, 2021.

40. On or about February 26, 2021, WCPG's third-party FMLA administrator denied Mr. Rettig's application for continuous leave on the grounds that he did not qualify for continuous leave.

41. WCPG would not reinstate Mr. Rettig.

42. Because WCPG would not provide necessary accommodations to allow Mr. Rettig to work, and his request for leave had been denied, Mr. Rettig applied for pandemic unemployment benefits on or about February 26, 2021.

43. Despite Mr. Rettig making multiple attempts to engage in a dialogue regarding his accommodations, WCPG never provided Mr. Rettig with its reasons for denying his request for accommodations.

44. On or about August 6, 2021, Mr. Rettig filed a charge of discrimination against WCPG with the EEOC.

45. On or about October 20, 2021, the EEOC held confidential mediation to attempt resolution of Mr. Rettig's charge of discrimination. This mediation was unsuccessful. The same day, WCPG formally terminated Mr. Rettig's employment and benefits.

46. WCPG terminated Mr. Rettig because of his disability, denied him a reasonable accommodation, and terminated him in retaliation for opposing disability discrimination.

47. As a result of WCPG's illegal conduct, Mr. Rettig has suffered damages including lost wages and emotional distress.

## VI. STATEMENT OF THE CLAIMS

### Count 1: Failure to Accommodate
### (42 U.S.C. § 12101 and O.R.C. § 4112.02)

48. Mr. Rettig incorporates paragraphs 1 through 47 as if fully rewritten herein.

49. Mr. Rettig suffers from a disability.

50. Mr. Rettig was otherwise qualified to work for WCPG with a reasonable accommodation.

51. WCPG was aware of Mr. Rettig's disability.

52. Mr. Rettig requested an accommodation in the form of remote work, the ability to work in a disinfected room that is not shared by others, the use of an air purifier, half-day work schedule, and no in-person meetings. The accommodations are reasonable because any of the accommodations would allow Mr. Rettig to perform the essential functions of his job and would not unduly harm WCPG.

53. WCPG terminated Mr. Rettig after denying him an accommodation.

54. A causal connection exists between Mr. Rettig's disability and the request for accommodation.

55. WCPG failed to provide the necessary accommodation and did not propose a reasonable, alternative accommodation that would allow Mr. Rettig to perform the essential functions of his position.

56. As a result of WCPG's illegal actions, Mr. Rettig has suffered damages including lost wages and emotional distress.

57. WCPG acted with malice and a conscious disregard for Mr. Rettig's rights under federal law not to be subjected to discrimination in his employment on account of a disability.

## Count 2: Disability Discrimination
## (42 U.S.C. § 12101 and O.R.C. § 4112.02)

58. Mr. Rettig incorporates paragraphs 1 through 57 as if fully rewritten herein.

59. Mr. Rettig suffers from a disability.

60. Mr. Rettig is qualified to perform the essential functions of his position with a reasonable accommodation.

61. WCPG terminated Mr. Rettig because of his disability, his record of disability, and/or because it regarded him as disabled.

62. As a result of WCPG's illegal actions, Mr. Rettig has suffered damages including lost wages and emotional distress.

63. WCPG acted with malice and a conscious disregard for Mr. Rettig's rights under federal law not to be subjected to discrimination in his employment on account of a disability.

## Count 3: Retaliation
## (42 U.S.C. § 12101 and O.R.C. § 4112.02)

64. Mr. Rettig incorporates paragraphs 1 through 63 as if fully rewritten herein.

65. Mr. Rettig engaged in protected activity when he complained of disability discrimination, when he requested multiple accommodations, and when he filed a charge of discrimination with the EEOC.

66. WCPG was aware of his complaints of discrimination, requests for accommodations, and his charge of discrimination.

67. WCPG terminated Mr. Rettig.

68. There is a causal connection between Mr. Rettig's termination and his complaints of discrimination, requests for accommodations, and his charge of discrimination.

69. As a result of WCPG's illegal actions, Mr. Rettig has suffered damages including lost wages and emotional distress.

70. WCPG acted with malice and a conscious disregard for Mr. Rettig's rights under federal law not to be subjected to discrimination in his employment on account of a disability.

**PRAYER FOR RELIEF**

Wherefore, John Rettig demands judgment against the West Chester Protective Gear as follows:

1. An award of compensatory damages for all economic damages suffered by Mr. Rettig in an amount to be determined at trial;

2. An award of compensatory damages for all non-economic damages suffered by Mr. Rettig in an amount to be determined at trial;

3. For an order reinstating Mr. Rettig to his previous position at WCPG, inclusive of all pay increases and benefits to which he would have been entitled had he not been terminated, or in the alternative, an award of front pay;

4. For an award of Mr. Rettig's reasonable attorney fees and costs;

5. For an award of any other relief in law or equity to which Mr. Rettig is entitled to under the premises.

Respectfully submitted,

**MEZIBOV BUTLER**

/s/ Brian J. Butler
Brian J. Butler (OH No. 0082675)
Dennis A. Gleason (OH No. 0099045)
615 Elsinore Place
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
bbutler@mezibov.com
dgleason@mezibov.com

*Attorneys for Plaintiff John Rettig*

## JURY DEMAND

Plaintiff John Rettig demands a jury trial to resolve all issues of fact related to his Complaint.

/s/ Brian J. Butler
Brian J. Butler (OH No. 0082675)